UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 07-67-EBA

DONALD QUILLEN, PLAINTIFF,

V. **MEMORANDUM OPINION & ORDER**

SAFETY-KLEEN SYSTEMS, INC., DEFENDANT.

## I. INTRODUCTION

This matter is before the undersigned on Defendant's Second Motion for Summary Judgment. [R. 87]. For the following reasons, the motion [Id.] is granted in part, and denied part.

## II. FACTUAL BACKGROUND

The facts, viewed in the light most favorable to Plaintiff, see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), are as follows:

Donald Quillen [Quillen] was diagnosed with myelodysplastic syndrome [MDS] in April of 2007. [R. 61 at 1]. From 1994 until 2007, he worked as a tool and die maker at Sargent & Greenleaf, Inc. [Sargent & Greenleaf]. [Id. at 2]. In the mid-1990s, Sargent & Greenleaf acquired a parts washer from Safety-Kleen Systems, Inc. [Safety-Kleen] for the tool room where Quillen primarily worked. [Id.]. As part of his work, Quillen routinely cleaned tools and machine parts in the Safety-Kleen parts washer. [Id.]. The parts washer contained Safety-Kleen 150 Solvent [the 150 Solvent], which contains the chemical benzene. [Id.]. In addition to the benzene in the 150 Solvent, other benzene-containing products were used at Sargent & Greenleaf and were introduced into the

solvent tank. [Id. at 3]. Benzene is associated with the development of MDS. [see R. 49-2 at 3; R. 61-5 at 2].

Quillen regularly inhaled the fumes from, and had extensive dermal exposure to, the 150 Solvent in the parts washer. [R. 61 at 2]. He used the parts washer daily, from one to ten times a day, for five to thirty minutes at a time. [Id.]. Quillen cleaned parts by opening the lid on the tank, placing the part on a rack in the tank, and then spraying it with the spray brush connected to the tank by a hose. [Id.]. He let the tool or part drip dry, and then removed it from the tank. [Id.]. When large parts needed to be cleaned, Quillen used a hoist to lift the part over the parts washer and sprayed it off with the spray brush. [Id.]. Quillen stood over the parts washer without any respiratory protection to protect him from the fumes from the parts washer. [Id. at 2-3]. In addition, the 150 Solvent regularly splashed onto his arms, wrists and hands, which caused his skin to become irritated, cracked, and red. [Id. at 3].

During the twelve years that Quillen worked for Sargent & Greenleaf, the 150 Solvent was never tested for its benzene content [R. 61-4 at 2], and no air sampling was done to determine how much benzene was in Quillen's breathing zone while he was working with or near the parts washer. [R. 52-3 at 11; R. 49-3 at 4]. As a result, the exact amount of Plaintiff's benzene-exposure is unknown. [R. 61 at 5].

### III. PROCEDURAL HISTORY

Quillen filed this action against Safety-Kleen on October 8, 2007, asserting claims of negligence, gross negligence, breach of the implied warranty of merchantability, and strict liability for defective design and failure to warn. [R. 1]. In his disclosures, Quillen identified Toxicologist Dr. George Rogers as an expert witness. [R. 49]. According to Dr. Rogers, the cause of Quillen's

2

MDS was his occupational exposure to the 150 Solvent used in the Safety-Kleen parts washer. [R. 49-2 at 4]. Dr. Rogers formed his opinion after employing a methodology known as "differential diagnosis." "Differential diagnosis" is defined as:

> [t]he method by which a physician determines what disease process caused a patient's symptoms. The physician considers all relevant potential causes of the symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history.

Hardyman v. Norfolk & Western Railway Co., 243 F.3d 255, 260 (6th Cir. 2001).

On February 11, 2009, Safety-Kleen filed a motion for summary judgment. [R. 54]. The basis for the motion was that Dr. Rogers' opinion was inadmissible under Fed. R. Evid. 702 and Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993), and thus no genuine issue of material fact existed concerning proximate causation. [R. 54-4 at 1-2]. The Court denied that motion on September 28, 2009. [R. 72].

After the conclusion of expert depositions, Defendant filed the instant motion for summary judgment on May 8, 2010. [R. 87]. In support, Safety-Kleen again argues that Dr. Rogers' opinion is inadmissible under Rule 702 and Daubert, and thus no genuine issue of material fact exists concerning proximate cause. [R. 87-21 at 1-26]. In addition, it contends that no genuine issue of material fact exists with respect to Plaintiff's claims of gross negligence, breach of the implied warranty of merchantability, and strict liability for defective design and failure to warn. [Id. at 26-38]. Quillen responded to the motion on May 30, 2010 [R. 128], contending that Dr. Rogers' opinion is admissible and creates a genuine issue with respect to proximate cause. Inexplicably, however, Plaintiff's response does not address Defendant's remaining arguments for summary judgment. [see generally Id.].

## IV. ANALYSIS

### (A) Whether Dr. Rogers' Opinion is Admissible

Rule 702 governs the admissibility of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Id. The Supreme Court announced in Daubert that under Rule 702, the "judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

Here, Safety-Kleen argues that Dr. Roger's opinion is inadmissible under Rule 702 and Daubert because (1) differential diagnosis is not a reliable method for determining the cause of Plaintiff's MDS, and (2) even if it is, Dr. Roger's methodology does not satisfy the test for admissibility set forth in Best v. Lowe's Home Centers, Inc., 563 F.3d 171 (6th Cir. 2009). [Id.]. The Court will address Safety-Kleen's arguments in turn.

### (1) Whether Differential Diagnosis is a Reliable Methodology in this Case

Defendant argues that differential diagnosis cannot properly be used in this case to determine the cause of Plaintiff's MDS. In support, Safety-Kleen points out that (1) there are many potential risk factors for MDS; (2) this is not a case in which a plaintiff was exposed to a chemical and soon thereafter developed an injury; (3) MDS has a long latency period and Quillen was exposed to known risk factors for decades; (4) the majority of cases of MDS are idiopathic; and (5) benzene is ubiquitous in the environment. [R. 87-21 at 5-6].

4

Defendant's argument fails. The Sixth Circuit has expressly recognized differential diagnosis as "an appropriate method for making a determination of causation for an individual instance of disease." Best, 563 F.3d, at 178 (citing Hardyman v. Norfolk & Ry. Co., 243 F.3d 255, 260 (6th Cir. 2000)); see also Westberry v. Gislaved Gummi AB, 178 F.3d 257, 263 (4th Cir. 1999) (noting that "the overwhelming majority of the courts of appeals that have addressed the issue have held that a medical [causation] opinion...based upon a reliable differential diagnosis is sufficiently valid to satisfy the first prong of the Rule 702 inquiry."). While Safety-Kleen highlights several factors that make it difficult to prove the cause of Quillen's MDS, this does not establish that differential diagnosis is inherently unreliable in this matter. In light of the substantial case-law endorsing differential diagnosis as a reliable methodology, the Court rejects Defendant's argument.

**(2) Whether Dr. Rogers' Methodology Satisfies the Test for Admissibility Set Forth in Best**

Safety-Kleen argues that Dr. Rogers' methodology does not satisfy the test for admissibility set forth in Best. In Best, the Sixth Circuit held that a medical-causation opinion in the form of a doctor's differential diagnosis is reliable and admissible where the doctor: (1) objectively ascertains, to the extent possible, the nature of the patient's injury, (2) rules in one or more causes of the injury using a valid methodology, and (3) engages in standard diagnostic techniques by which doctors normally rule out alternative causes to reach a conclusion as to which cause is most likely. Best, 563 F.3d, at 179. Safety-Kleen contends that the third requirement is not satisfied because Dr. Rogers failed to consider, let alone rule out, several possible causes of Quillen's MDS. [R. 87-21 at 2-4]. Among these are (1) Plaintiff's occupational exposure to cutting oils and soluble oils from 1964-2007; (2) ionizing radiation; (3) heavy metals and alloys such as lead and aluminum; and (4) a lifetime of second hand smoke exposure.

5

The Court finds that Dr. Rogers sufficiently ruled out alternative causes of Plaintiff's disease, thereby satisfying the third requirement of Best. With respect to Quillen's exposure to cutting and soluble oils while working at Sargent & Greenleaf, Dr. Rogers acknowledged that the oils probably contained benzene; however, he also testified that he believed that Quillen was exposed to much greater amounts of benzene from the 150 Solvent in the parts washer than from the small amounts of oil he used outside of the machine. [See R. 128-1 at 3]. Similarly, Dr. Rogers acknowledged that Quillen was exposed to oils containing benzene in the workplace prior to working for Sergeant & Greenleaf. [Id.]. However, he further testified that Quillen used only very small quantities of these oils episodically, that many of them contained only very small amounts of benzene, and that such exposures were not comparable to those at Sargent & Greenleaf because Quillen did not use a parts washer or do any de-greasing work. [See Id. at 3-4].

With respect to ionizing radiation, Dr. Rogers testified that generally speaking, x-rays slightly increase one's risk of contracting leukemia. [See R. 87-5 at 41]. However, Defendant points to nothing in the record demonstrating that Quillen was ever exposed to a statistically significant amount of such radiation. Similarly, Dr. Rogers was never asked during his deposition whether Quillen's alleged exposure to heavy metals and alloys contributed to his development of MDS. [See generally R. 87-5].

Defendant's strongest argument is that Dr. Rogers did not rule out Quillen's decades of second-hand smoke exposure as a possible cause of his MDS. [see R. 87-10 at 20-25]. Although experts "need not rule out every conceivable cause in order for their differential diagnosis-based opinions to be admissible," see Best, 563 F.3d at 181, they must provide a reasonable explanation "as to why he or she has concluded that any alternative cause suggested by the defense was not the

sole cause." Id. at 179. Here, Dr. Rogers concluded that Quillen's MDS was more likely than not related to the 150 Solvent due to Quillen's twelve years of extensive dermal exposure thereto. Plaintiff's substantial and lengthy exposure to the 150 solvent supplies a reasonable explanation for Dr. Rogers' belief that second-hand smoke exposure is not the sole cause of Quillen's MDS.

The Court concludes that Dr. Rogers' methodology satisfies the test for admissibility set forth in Best. Specifically, he (1) objectively ascertained, to the extent possible, the nature of Plaintiff's injury - MDS, (2) employed a valid methodology to "rule in" the 150 Solvent as a potential cause, and (3) sufficiently engaged in standard techniques to "rule out" alternative causes. Safety-Kleen's remaining challenges to Dr. Rogers' methodology are proper subjects for cross-examination, but do not warrant wholesale exclusion of his opinion. See Best, 563 F.3d, at 180 ("Where, as here, a doctor has used a reliable method to conclude that the plaintiff has suffered an injury, potential problems such as those pointed out by Lowe's do not warrant the total exclusion of plainly relevant testimony."); see also Daubert, 509 U.S., 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). As Dr. Rogers' opinion satisfies the requirements of Rule 702 and Daubert, there is a genuine issue of material fact on the question of proximate cause.

**(B)    Quillen's Warranty and Strict Liability Claims**

Safety-Kleen argues that no genuine issue of material fact exists concerning Quillen's warranty and strict liability claims because its contract with Sargent & Greenleaf was for solvent services, and not the sale of goods. [R. 87-12 at 36-39]. The Court agrees.

In United Serv. Auto. Ass'n v. ADT Sec. Serv., Inc., 241 S.W.3d 335 (Ky App. 2006), the

7

plaintiffs had contracted with the defendant to equip their residence with a fire alarm system. The contract was predominantly for services, with the defendant retaining title to the fire alarm system control set and being obligated only in the service and maintenance of the system. Id. at 341. After the plaintiffs' residence was damaged by fire, they filed suit against defendant, asserting claims of breach of warranty and strict liability. Id. at 338. The Kentucky Court of Appeals affirmed the dismissal of their claims, stating as follows:

> We have held that to prevail in an action based upon strict products liability, a plaintiff must establish: (1) that there is a "product,"...which (5) results in physical harm to the ultimate user or consumer or his property." Radcliff Homes, Inc. v. Jackson, 766 S.W.2d 63, 68 (Ky.App.1989)(citing Restatement (Second) of Torts 402A (1965)). Thus, because this contract involves a contract for services, no cause of action can be maintained on strict liability. Similarly, the Uniform Commercial Code is inapplicable as it applies only to contracts for the sale of goods and does not apply to a contract for services. See KRS 355.2-201 and KRS 355.2-105. The Code affords no basis for an action for breach of warranty.

Id. at 341.

United is dispositive of this matter. Defendant presents uncontroverted evidence that the contract at issue was for solvent services, and not the sale of goods. For instance, the record reflects that Safety-Kleen retained ownership of the parts washer and solvent used at Sargent & Greenleaf. [see R. 87-16 at 3; see also R. 87-17 at 3-5]. The evidence further reflects that Safety-Kleen would periodically remove Sargent & Greenleaf's used solvent, exchange it with recycled solvent, and then recycle the used solvent. [See R. 87-16 at 4-6; see also R. 87-17 at 5].

As the uncontroverted evidence reflects that the contract at issue was for services, and not the sale of goods, Plaintiff's warranty and strict liability claims cannot prevail. United, 241 S.W.3d, at 341. Accordingly, the Court will grant summary judgment thereon.

**(C)     Plaintiff's Negligence and Gross Negligence Claims**

Finally, Defendant contends that there is no genuine issue of material fact with respect to Plaintiff's claims of negligence and gross negligence. [R. 87-21 at 35-39]. The Court disagrees.

Regarding Quillen's negligence claim, the Court has already determined that Dr. Roger's opinion is admissible and creates a genuine issue of material fact with respect to causation. Further, Defendant's conclusory assertion that Plaintiff has not presented sufficient evidence on the elements of duty and breach is insufficient to show the absence of a genuine issue of material fact. Accordingly, the Court will not grant summary judgment on Quillen's negligence claim.

Likewise, summary judgment is not proper with respect to Plaintiff's gross negligence claim. The Kentucky Court of Appeals has held that "a manufacturer's failure to test for defects that pose a risk of serious injury and that are susceptible to adequate pre-release testing can amount to a conscious or reckless disregard for the rights and safety of others and thus can justify an award of punitive damages." Suffix, U.S.A., Inc. v. Cook, 128 S.W.3d 838, 842 (Ky. App. 2004). As noted supra, the parties indicate that during the twelve years that Quillen worked for & Greenleaf, the 150 Solvent was never tested for its benzene content [R. 61-4 at 2], and no air sampling was done to determine how much benzene was in Quillen's breathing zone while he was working with or near the parts washer. [R. 52-3 at 11; R. 49-3 at 4]. Viewing the facts in the light most favorably to Plaintiff, a jury could find that Safety-Kleen's failure to test the 150 Solvent used at Sargent & Greenleaf for benzene content constituted a conscious or reckless disregard for the rights of others, thus justifying a punitive damages award.

## V. CONCLUSION

For the foregoing reasons, and being otherwise sufficiently advised,

IT IS ORDERED AS FOLLOWS:

9

(1) Defendant's Second Motion for Summary Judgment [R. 87] is GRANTED IN PART, insofar as Plaintiff's claims of breach of the implied warranty of merchantability, and of strict liability for defective design and failure to warn, are DISMISSED.

(2) In all other respects, Defendant's Second Motion for Summary Judgment [R. 54] is DENIED.

Signed May 21, 2010.

Signed By:
*Edward B. Atkins*  *EBA*
**United States Magistrate Judge**